IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

JEAN EVANS THARP, Plaintiff,

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, Defendant.

CIVIL ACTION NO. 9:10-3276-DCN-BM

**REPORT AND RECOMMENDATION**

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] on July 9, 2007 (protective filing date), alleging disability as of November 17, 2006 due to fibromyalgia, general complaints of pain, and anxiety. (R.pp. 117, 127). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an

[1]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].



Administrative Law Judge (ALJ), which was held on August 4, 2009. (R.pp. 33-62). Prior to the hearing, Plaintiff amended her alleged onset date to May 14, 2007. (R.p. 150). The ALJ thereafter denied Plaintiff's claims in a decision issued January 6, 2010. (R.pp. 9-22). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-4).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).





The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff, who was forty-two (42) years old when she alleges she became disabled (amended disability onset date), has a high school education with past relevant work experience as a machine operator. (R.pp. 38, 117, 127). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of fibromyalgia, cervical and back pain, carpal tunnel syndrom in the right upper extremity, dysthymia, and numbness in her left hand and fingers, rendering her unable to perform her past relevant work, she nevertheless retained the residual functional capacity (RFC) to perform a restricted range of medium work[3], and was therefore not entitled to disability benefits. (R.pp. 11, 16, 20-21).

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[3]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).





Plaintiff asserts that in reaching this decision, the ALJ erred by failing to properly assess and consider the opinion evidence from Dr. Donald Salmon and Nurse Practitioner Susan Breazeale, and by improperly considering and evaluating Plaintiff's subjective testimony as to the extent of her pain and limitations. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence as that term is defined in the applicable caselaw to support the decision of the Commissioner, and that the decision should therefore be affirmed.

**I.**

With respect to the opinion of Dr. Salmon, who saw Plaintiff on only one occasion for a physiological examination, the ALJ found Dr. Salmon's opinion unpersuasive and gave it little weight, concluding that it was not consistent with the other evidence of record and appeared to be based on Plaintiff's subjective, self-reported complaints. (R.pp. 13, 15, 19-20). The undersigned can find no reversible error in the ALJ's treatment of this opinion.

Dr. Salmon saw the Plaintiff on July 17, 2008 for a psychological evaluation. Plaintiff complained of having "grown increasingly anxious and depressed since she had to stop working several years ago . . . ." Plaintiff also told Dr. Salmon that she had occasional panic attacks, generally preferred to be by herself or with her immediate family, and was becoming more withdrawn and socially isolated. Plaintiff lived with her husband and daughter, and she reported that she was "very close" to two of her four sisters, and got along "alright" with the other two. Plaintiff described a generally unhappy childhood, and advised that she had worked in a variety of jobs over the years. Plaintiff told Dr. Salmon that she had been diagnosed with degenerative disc disease, fibromyalgia, and carpal tunnel syndrome, and that she is in constant pain. Plaintiff also complained of having a





hypothyroid and of migraine headaches. Plaintiff rated her depression as varying from 7 to 9 ½ on a 10 point scale, and said that most of the time she felt anxious, worried, tense and nervous.

Dr. Salmon administered an MMPI-2 personality test, which he opined reflected an individual who tended to feel anxious, tense and nervous. Dr. Salmon noted that Plaintiff had very strong feelings of depression, and general feelings of hopelessness with regard to the future. Although Dr. Salmon acknowledged that Dr. Spurgeon Cole had opined in August 2007 that Plaintiff might be only moderately impaired with respect to her ability to concentrate, he concluded that Plaintiff "would reasonably, at this point, be considered to be markedly impaired in regard to concentration, persistence and pace", stating that Plaintiff is fatigued almost all of the time, is often dizzy from medications she takes, and is distracted by chronic pain. Dr. Salmon further stated that Plaintiff demonstrated a low average fund of information and capacity for verbal reasoning on testing, although he also noted that Plaintiff was intelligent enough to be able to perform adequately on most mental status questions. He opined that Plaintiff had an "emotional disorder" as opposed to a "cognitive disorder", defining a cognitive disorder as being a disorder as a result of a stroke or other form of dementia. Plaintiff and her husband reported that she did not do much around the house, with Plaintiff mostly either taking naps or watching television or family activities, and occasionally talking on the phone. Dr. Salmon assigned Plaintiff a GAF of 45 to 50,[4] and opined that Plaintiff had moderate limitations with regard to daily activities and marked limitations with regard to social interaction, concentration, persistence and pace. (R.pp. 407-413). See also (R.pp. 414-419) [Mental

---

[4]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). "A GAF score of 41 to 50 is classified as reflecting 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)'". Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001).





Impairment Questionnaire Form].

As noted, the ALJ assigned little to no weight to Dr. Salmon's findings, concluding that Dr. Salmon had "relied heavily on the subjective report of symptoms and limitations provided by the [Plaintiff] and seemed to uncritically accept what the [Plaintiff] reported." (R.pp. 19-20). Cf. Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ properly rejected physician's opinion that was based on the claimant's own subjective complaints]; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may assign lesser weight to the opinion of a treating physician that was based largely upon a claimant's self-reported symptoms]; see also Matney Ex. Rel Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) [ALJ may properly give little weight to the opinion of an examining physician who saw the claimant only one time]. In reaching this conclusion, the ALJ stated that Dr. Salmon's finding that Plaintiff would be able to handle funds in her own best interests if awarded benefits was not compatible with his finding that Plaintiff had marked limitations in concentration, persistence and pace, because the ability to manage funds requires the ability to concentrate and compute. (R.pp. 20, 413). The ALJ also noted Plaintiff's report to neurologist Dr. Timothy Baxley in January 2008 that her depression was improved with Celexa, and that her fatigue and energy had significantly improved with the addition Synthroid. (R.p. 12).

In reaching his decision, the ALJ also cited to the findings of Dr. Cole, who performed a consultative examination on August 31, 2007, and found that Plaintiff's speech patterns suggest that she has average and near average cognitive ability, and to whom Plaintiff indicated that she had had a "good childhood". Dr. Cole noted that the only time Plaintiff had been treated at a mental health center was about seventeen years previous when she was having problems with her first husband, and that she had never been treated in an inpatient psychiatric facility and had never been treated by a





private psychiatrist or any other mental health professional since seventeen years ago. On examination, Dr. Cole found Plaintiff to be oriented with her thought process being logical and goal directed. He opined that although Plaintiff seemed somewhat easily distracted, she concentrated adequately and he suspected her concentration might be "moderately impaired". While Plaintiff told Dr. Cole that her daily living activities were limited in part due to her physical problems, she also told him that friends and neighbors drop by occasionally, she would sometimes go to the grocery store, that she took care of her own hygiene, and that she could interact adequately with others even though she had a tendency to "prefer" being alone.

Plaintiff also indicated that, although she tended to forget a lot of things, when she was working she got along well with others and that she was able to follow simple, oral and written instructions. Plaintiff stated that she does not read very much because of headaches, but then indicated that she drives and watches television. On a Mini-Mental State examination, Plaintiff was able to function adequately. Dr. Cole noted that although Plaintiff "is convinced that she is depressed and anxious", she was not receiving any type of psychiatric treatment. Plaintiff was being provided with Cymbalta and Valium by her primary care physician, and Dr. Cole opined that Plaintiff's social functioning appeared to be only moderately impaired. He also opined that Plaintiff "gets along satisfactorily with others" and can be around people. (R.pp. 12-13, 328-331).

In addition to Dr. Cole's report, the ALJ also noted the records of Plaintiff's primary care physician, Dr. Billy Campbell of the Foothills Family Medicine Clinic. On July 23, 2008, Dr. Campbell noted that Plaintiff had had no recent history of a myriad of psychiatric problems, including persistent or frequently recurrent anxieties, inappropriate shyness, persistence worrying, or manic depressive episodes or illness. He also noted that while Plaintiff's depression was aggravated because





she could not take Cymbalta, her panic attacks were stable. (R.p. 426). These minimal findings by Plaintiff's treating physician were issued the same month as Dr. Salmon's findings from his consultative examination that Plaintiff was "markedly" restricted in her social interaction and with regard to concentration, persistence or pace. The ALJ further noted that in February 2009, Dr. Campbell opined after review of Plaintiff's systems that she was alert, cooperative, and did not "appear acutely ill . . . ." (R.pp. 14, 446). Plaintiff was also seen during the relevant time period by Dr. Baxley, who noted on January 31, 2008 that Plaintiff was alert, pleasant, and in no immediate distress. Plaintiff reported to Dr. Baxley that her depression had improved with Celexa, and that her fatigue and energy had also significantly improved with the addition of Cynthroid. (R.p. 402). The ALJ also noted Dr. Baxley's findings from April 2009, where Plaintiff was found on examination to be alert and oriented x 3, pleasant, and in no immediate distress; (R.pp. 12, 475); and that in an RFC Questionnaire completed by Dr. Campbell on August 3, 2009, Dr. Campbell opined that, although Plaintiff's pain or other symptoms were severe enough to frequently interfere with her attention and concentration, she was capable of performing low stress jobs. (R.pp. 14, 478).

Plaintiff's medical records were also reviewed by two State Agency Psychologists, Dr. Debra Price and Dr. Lisa Varner, both of whom concluded that Plaintiff had only mild restrictions in her activities of daily living, and moderate restrictions with respect to social functioning and concentration, persistence or pace, with no episodes of decompensation. (R.pp. 332-345, 360-373). Dr. Price found that Plaintiff was capable of performing routine, repetitive tasks in a low stress environment, while Dr. Varner believed that Plaintiff could do simple, unskilled work with no public contact. (R.pp. 344, 372). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physician can constitute substantial evidence to support the decision of the





Commissioner].

The ALJ reviewed this evidence and determined that Plaintiff's mental impairment resulted in a mild restriction in her activities of daily living, and a moderate restriction in her social functioning and with regard to concentration, persistence or pace. (R.p. 15); see generally (R.pp. 12-14, 19-20). These findings are supported by the records and findings of Dr. Campbell, Dr. Cole, Dr. Baxley, and the State Agency physicians, all of which provide substantial evidence to support this decision. See Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]. The undersigned can find no reversible error in the ALJ's treatment and consideration of the contrary opinion of Dr. Salmon. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Laws, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]. This argument is without merit.

**II.**

With respect to Nurse Practitioner Susan Breazeale, Plaintiff argues that the ALJ applied an improper legal standard by discrediting Breazeale as not being an acceptable medical source. The record reflects that Nurse Breazeale worked in Dr. Baxley's office, and on October 25, 2007 she completed a fibromyalgia RFC Questionnaire in which she stated that Plaintiff was incapable of even low stress work, that she can only sit and stand for twenty minutes at a time, could stand for about two hours in an eight hour work day and sit at least six hours with the need to walk





for four or five minutes every twenty minutes, with the lifting capacity for light work. (R.pp. 352-357).

A review of the decision shows that the ALJ did consider Breazeale's opinion report, but correctly noted that, to the extent Breazeale opined that Plaintiff is unable to perform even low stress work, such a finding is reserved to the Commissioner. (R.p. 20); see Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]. Hence, the ALJ was under no obligation to accept this conclusion. See also 20 C.F.R. § 404.1527(e) ["a statement that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled"].

Further, the ALJ also noted that Breazeale is a Nurse Practitioner, not a medical doctor. (R.p. 20). As such, her opinion was not entitled to any controlling weight. See 20 C.F.R. § 404.1513 [Opinions of nurse practitioners not entitled to same weight as the opinion of a physician]; cf. Nance v. Apfel, No. 97-1782, 1997 WL 755406 at * 3 (4th Cir. Dec. 8, 1997)["[T]he opinions of those other than trained medical doctors , such as nurses, are not afforded the same weight as the opinions of physicians."]; Bailey v. Astrue, No. 10-1049, 2011 WL 3961818 at * 6 (M.D.Fla. Sept. 8, 2011)[Opinions of nurse practitioner are not evaluated under the treating physician standard]. While Plaintiff correctly argues that Breazeale's opinion is nevertheless entitled to consideration, it is clear from a review of the decision that the ALJ did consider her opinion, devoting an entire paragraph to a discussion of its merits. However, the ALJ also noted that Dr. Baxley's records since the date of Breazeale's opinion consistently reported that Plaintiff's energy had improved, that Plaintiff had an intact gait with a functional range of motion, and extremity strength of 4 + / 5 or





better. (R.p. 20); see also (R.pp. 12, 18). Cf. Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]; Haynes v. Astrue, No. 09-484, 2010 WL 3377715 at * 3 (M.D.Ala. Aug. 25, 2010)["Muscle atrophy is an objective medical indication of pain and lack thereof in [Plaintiff] militates against the conclusion that she suffers from pain which precludes her from substantial gainful activity."]; see also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)[the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations].

A review of Dr. Baxley's records substantiates these findings. See generally, (R.pp. 309, 311, 402, 404, 439, 475). The objective findings in these examination records do not reflect physical restrictions as severe as those opined to by Nurse Breazeale, and in concluding that Plaintiff could perform a restricted range of medium work, the ALJ also referred to Dr. Campbell's records reflecting essentially normal back and extremity examinations with full range of motion; (R.pp. 14, 18, 424, 426, 428, 431 (negative x-rays), 433, 436, 446, 450, 471, 489); as well as to the reports of State Agency Physicians Dr. Dale Van Slooten and Dr. Carl Anderson, both of whom opined that Plaintiff had the exertional capacity for medium work with the ability to sit, stand and/or walk six hours in an eight hour work day; frequently balance, stoop, kneel, crouch, crawl and climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; with an unlimited ability to push and/or pull, but with an need to avoid hazardous machinery. (R.pp. 319-326, 378-385). The ALJ gave significant weight to the records from Dr. Van Slooten and Dr. Anderson, finding that their opinions were in





accord with the medical evidence. (R.p. 20).

In light of this abundance of medical evidence showing Plaintiff with a greater exertional capacity than opined to by Nurse Breazeale, the undersigned can find no reversible error in the ALJ's decision to give no weight to Nurse Breazeale's opinion. See SSR 06-03p, 2006 WL 2329939, at * 4 [The ALJ must consider whether "other source" evidence is consistent with the medical evidence]; see also Lee v. Sullivan, 945 F.2d 687, 693-694 (4th Cir. 1991) [denial of benefits affirmed where physicians who examined claimant and heard all of his complaints failed to give an opinion that he was totally and permanently disabled].

**III.**

Finally, Plaintiff also argues that the ALJ improperly considered and assessed her subjective testimony concerning the extent of her pain and limitations. However, after a review of the decision and the record in this case, the undersigned does not find that the ALJ conducted an improper credibility analysis, or that his decision otherwise reflects a failure to consider the effect Plaintiff's impairments had on her ability to work. Bowen v. Yuckert, 482 U.S. 137, 146, n. 5 (1987)[Plaintiff has the burden to show that she has a disabling impairment]; Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

The ALJ reviewed Plaintiff's testimony that she has pain over her entire body and that her emotional condition prevented her from being around people or performing work activities, but found that her testimony as to the persistence and limiting effects of her impairments were not credible to the extent they were inconsistent with the residual functional capacity he had found. (R.p. 17). The ALJ not only noted inconsistencies in Plaintiff's testimony as to her activities and other





reports and evidence; (R.pp. 17-18); but also gave a thorough review of the medical reports and evidence in finding that her impairments were not as severe as she claimed. (R.pp. 11-20). The record reflects that the ALJ properly considered *all* of the evidence presented, including Plaintiff's subjective testimony, and weighed that evidence in reaching his conclusions, which the undersigned finds are supported by substantial evidence. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[Generally conservative treatment not consistent with allegations of disability]; see also Gross v. Heckler, 785 F.2d at 1166 [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Laws, 368 F.2d 640 [Commissioner's decision must be upheld if the record contains evidence which a reasoning mind would accept as sufficient to support the conclusion]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)[ALJ is entitled to observe the Plaintiff, evaluate her demeanor, and consider how the Plaintiff's testimony fits with the rest of the evidence].

The ALJ then asked the Vocational Expert at the hearing if someone with the limitations he had found limited to simple one, to two step tasks and working in a low stress





environment with no public contact could perform work activity, in response to which the Vocational Expert identified several jobs that Plaintiff could perform with these limitations. (R.pp. 57-58). Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; Ramsey v. U.S. Comm'sr Soc. Sec. Admin., No. 06-1986, 2008 WL 341698 at * 1 (W.D.La. Feb. 7, 2008)["The ALJ adequately included limitations regarding social functioning in the requirement that Plaintiff not have contact with the public under circumstances generating high levels of stress.]; Salazar v. Astrue, No. 07-565, 2008 WL 4370056 at * 6 (C.D.Cal. Sept. 23, 2008)[Hypothetical's limitation of "no public contact" reflected the moderate social interaction limitation]. No error is found in the ALJ's treatment of the evidence and subjective testimony, and this argument is therefore without merit.

## Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.





The parties are referred to the notice page attached hereto.

Bristow Marchant
United States Magistrate Judge

November 1, 2011
Charleston, South Carolina





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



